IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WESLEY HANSON,**

    **Plaintiff,**

  **v.**                                         **CIVIL NO. 1:24-CV-31**
                                                             **(KLEEH)**

**SENIOR TROOPER D.M. GOODMAN,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO DISMISS [ECF NO. 5]**

Pending before the Court is a motion to dismiss filed by the Defendant, Senior Trooper D.M. Goodman. For the reasons discussed herein, the motion is **GRANTED**.

## I. PROCEDURAL BACKGROUND

On March 28, 2024, Plaintiff Wesley Hanson ("Hanson") filed this action against Defendant Senior Trooper D.M. Goodman ("Trooper Goodman"). On May 22, 2024, Trooper Goodman filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The motion is fully briefed and ripe for review. On September 10, 2024, the Court convened a hearing on the motion.

## II. ALLEGATIONS IN THE COMPLAINT

The Complaint asserts the following set of facts. Hanson is a resident of Taylor County, West Virginia. Compl., ECF No. 1, at ¶ 1. Trooper Goodman is a State Trooper employed by the West

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO DISMISS [ECF NO. 5]**

Virginia State Police. Id. ¶ 2. On June 8, 2023, Hanson was the subject of a traffic stop conducted by Trooper Goodman. Id. ¶ 8. Trooper Goodman advised Hanson of the purpose of the stop: lack of motor vehicle inspection, non-transparent material below the ASI line of the windshield, and tires beyond the wheel wells, which constitutes unsafe equipment. Id. ¶ 9. Hanson peacefully attempted to explain his violations, but Trooper Goodman interrupted him, spouting profanities and calling him a "f*cking liar." Id. ¶ 10. Trooper Goodman returned to his own vehicle while shouting, "You're getting a ticket!" Id. ¶ 11. Trooper Goodman returned to Hanson's vehicle to present him with citations for the violations. Id. ¶ 13.

Trooper Goodman explained the citations to Hanson before handing them to him. Id. ¶ 15. Hanson tore up the citations and placed them within his vehicle. Id. ¶ 16. Trooper Goodman then grabbed the door handle of Hanson's vehicle and demanded that he step out. Id. ¶ 17. Hanson asked him why he was being asked to step out. Id. ¶ 18. Trooper Goodman told Hanson that he was under arrest because he "just ripped the ticket up" and, as a result, he believed that Hanson was "not going to appear in court." Id. ¶ 19. Hanson responded that he intended to appear in court and pay his ticket. Id. ¶ 20.

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO DISMISS [ECF NO. 5]**

Hanson stepped out of his vehicle, as instructed. Id. ¶ 26. Trooper Goodman then grabbed Hanson, pulled his arm forcefully to remove him from the vehicle, and threw Hanson's cell phone to the ground before placing him in handcuffs. Id. ¶ 27. Trooper Goodman said, "You have to appear on your citation. . . . I don't take that as you are going to." Id. ¶ 28. Hanson repeatedly stated that he intended to appear for the citation and pay his ticket. Id. ¶ 29.

Trooper Goodman placed Hanson in the back of his police cruiser and brought him to the police station. Id. ¶ 30, 34. Trooper Goodman charged with certain traffic offenses, along with obstruction. Id. ¶ 35. Hanson asserts that he did not interfere with Trooper Goodman's performance of any of his legal duties. Id. ¶¶ 36, 37. He asserts that Trooper Goodman intentionally mischaracterized his interaction with Hanson in the report that he drafted. Id. ¶ 39. Based on these facts, Hanson brings the following claims against Trooper Goodman in both his official and individual capacities:

> (1) Violation of the United States Constitution, First Amendment (42 U.S.C. § 1983);
>
> (2) Violation of the United States Constitution, Fourth Amendment (42 U.S.C. § 1983);
>
> (3) Abuse of Process; and

(4) Battery.

### III. STANDARDS OF REVIEW

### Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows the Court to dismiss an action for lack of jurisdiction over the subject matter. A plaintiff bears "the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted). In considering a motion to dismiss pursuant to Rule 12(b)(1), the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (citation omitted). The court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citation omitted). When a defendant asserts multiple defenses, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (citations and quotation marks omitted).

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO DISMISS [ECF NO. 5]**

**Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." Johnson v.

Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

### IV.  DISCUSSION

For the reasons discussed below, Hanson's claims fail as a matter of law.  First, Trooper Goodman is entitled to sovereign immunity in his official capacity.  As for the individual capacity claims, dismissal of each claim is appropriate because Trooper Goodman's arrest of Hanson was lawful.  Finally, even if Trooper Goodman's conduct technically violated the Constitution, he is entitled to qualified immunity because he was not on notice that his conduct was unconstitutional.

**A.  As a state employee, Trooper Goodman is entitled to sovereign immunity to extent that he is sued in his official capacity.**

The Eleventh Amendment to the United States Constitution provides, in pertinent part, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]"  Eleventh Amendment immunity also "applies to . . . state employees acting in their official capacity."  Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996) (citation omitted).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO DISMISS [ECF NO. 5]**

different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted).

There are three exceptions to sovereign immunity. See Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 618 (2002). Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and act[s] pursuant to a valid grant of constitutional authority." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) (quotation marks and citation omitted). Third, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citation omitted).

Here, none of the exceptions apply. While 42 U.S.C. § 1983 provides for a federal cause of action, it does not abrogate the Eleventh Amendment. See Quern v. Jordan, 440 U.S. 332, 241 (1979). Accordingly, the Court **GRANTS** Trooper Goodman's motion to dismiss with respect to the official capacity claims because he is entitled to sovereign immunity in his official capacity. The official capacity claims are **DISMISSED**.

> **B. Trooper Goodman's arrest of Hanson was lawful because Hanson refused to accept his citation as his written promise to appear in court.**

State Police officers are authorized to arrest violators of any traffic offense. See W. Va. Code § 15-2-12. Under Chapter 17C of the West Virginia Code (Traffic Regulations and Laws of the Road),

> (a) Whenever any person is arrested for any violation of this chapter punishable as a misdemeanor, the arrested person shall be immediately taken before a magistrate or court within the county in which the offense charged is alleged to have been committed and who has jurisdiction of the offense and is nearest or most accessible with reference to the place where the arrest is made, in any of the following cases:
>
> . . .
>
> (7) In any other event when the person arrested refuses to accept the written notice to appear in court as his or her promise to appear in court or to comply with the terms of the written notice to appear in court as provided in section four of this article[.]

Id. § 17C-19-3. One can avoid a custodial experience by securing his or her own release in accordance with the next section of the Code:

> The arrested person in order to secure release, as provided in this section, must accept a copy of the written notice prepared

> by the arresting officer. The officer shall deliver a copy of the notice to the person promising to appear. Thereupon, said officer shall forthwith release the person arrested from custody.

Id. § 17C-19-4(d).

Here, it is undisputed that Hanson violated the traffic code and Trooper Goodman had probable cause to arrest him for the traffic violations. Hanson argues, however, that the traffic stop was "over" after the citations were issued, and Trooper Goodman had no probable cause to arrest him after issuing the citation. Trooper Goodman argues that an objectively reasonable officer could have concluded that by ripping up the citation, Hanson refused to "accept the written notice to appear in court as his . . . promise to appear in court[.]" See id. § 17C-19-3(a)(7). In accordance with the law, the next step was that Hanson "shall be immediately taken before a magistrate or court" by Trooper Goodman. See id. § 17C-19-3(a).

The Court finds that Hanson's ripping up the citation constituted a refusal "to accept the written notice to appear in court as his . . . promise to appear in court," which necessitated Hanson's transportation to a magistrate. Accordingly, Trooper Goodman's arrest of Hanson was lawful.

**C.   Because Trooper Goodman's arrest of Hanson was lawful, all of Hanson's claims fail as a matter of law.**

All of Plaintiff's claims require that a constitutional violation occurred. Because it did not, all claims fail as a matter of law.

**1.   First Amendment (Count One)**

Hanson asserts that Trooper Goodman arrested him in retaliation for tearing up the ticket, which Hanson characterizes as speech. "A First Amendment retaliatory-arrest claim fails as a matter of law if there was 'probable cause for the arrest.'" Hulbert v. Pope, 70 F.4th 726, 738 (4th Cir. 2023), cert. denied, 144 S. Ct. 494 (2023). As the Court has already found, Trooper Goodman had probable cause to arrest Hanson after Hanson violated the traffic code. When Hanson refused to accept his citation as his promise to appear in court, Trooper Goodman was required to take him into custody. Accordingly, there was no First Amendment violation as a matter of law. Trooper Goodman's motion to dismiss is **GRANTED** in this respect, and Count One is **DISMISSED.**

**2.   Fourth Amendment (Count Two)**

Hanson asserts that Trooper Goodman unreasonably seized him in violation of the Fourth Amendment. A Fourth Amendment unreasonable seizure claim, like a First Amendment retaliatory-arrest claim, also fails as a matter of law if there was probable

cause for the arrest. See id. Again, as the Court has already found, Trooper Goodman had probable cause to arrest Hanson after Hanson violated the traffic code. When Hanson refused to accept his citation as his promise to appear in court, Trooper Goodman was required to take him into custody. Accordingly, there was no Fourth Amendment violation as a matter of law. Trooper Goodman's motion to dismiss is **GRANTED** in this respect, and Count Two is **DISMISSED**.

### 3.  Abuse of Process (Count Three)

Hanson argues that Trooper Goodman is liable for abuse of process. "Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." Williamson v. Harden, 585 S.E.2d 369, 372 (W. Va. 2003) (citations omitted). The elements of an abuse of process claim include "first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." Preiser v. MacQueen, 352 S.E.2d 22, 28 n.8 (W. Va. 1985) (citation omitted). Notably, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id.

Again, as the Court has already found, Trooper Goodman had probable cause to arrest Hanson after Hanson violated the traffic

code. When Hanson refused to accept his citation as his promise to appear in court, Trooper Goodman was required to take him into custody. Accordingly, there was nothing improper about Trooper Goodman's actions and no abuse of process as a matter of law. Trooper Goodman's motion to dismiss is **GRANTED** in this respect, and Count Three is **DISMISSED**.

### 4. Battery (Count Four)

Hanson argues that Trooper Goodman committed a battery against him. "An activity that would otherwise subject a person to liability in tort for assault and battery . . . does not constitute tortious conduct if the actor is privileged to engage in such conduct." Hutchinson v. W. Va. State Police, 731 F. Supp. 2d 521, 547 (S.D.W. Va. 2010), aff'd sub nom., Hutchinson v. Lemmon, 436 F. App'x 210 (4th Cir. 2011). Police officers are privileged to use reasonable force to remove the occupants of a lawfully stopped vehicle and arrest them. See Weigle v. Pifer, 139 F. Supp. 3d 760, 776-77 (S.D.W. Va. 2015).

Presumably, Hanson's argument is that the arrest itself was a constitutional violation, so even a deminimis use of force is considered a battery. Again, as the Court has already found, Trooper Goodman had probable cause to arrest Hanson after Hanson violated the traffic code. When Hanson refused to accept his citation as his promise to appear in court, Trooper Goodman was

required to take him into custody. Accordingly, there was no battery as a matter of law. Trooper Goodman's motion to dismiss is **GRANTED** in this respect, and Count Four is **DISMISSED**.

### 5. Punitive Damages (Count Five)

Hanson asserts a separate count for punitive damages. The Court finds that punitive damages do not constitute an independent cause of action. See Coss v. Teters, No. 2:23-CV-00180, 2023 WL 3470899, at *7 (S.D.W. Va. May 12, 2023). Count Five is hereby **DISMISSED** to the extent that it asserts a cause of action.

> **D. Even if Trooper Goodman's actions technically violated the Constitution, he is entitled to qualified immunity in his individual capacity because he was not on notice that his conduct was unconstitutional.**

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). It "may be invoked by a government official sued in his personal, or individual, capacity." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006). In order to be entitled to qualified immunity, a defendant must either show (1) that no constitutional or statutory violation occurred, or (2) that the right violated was not clearly established at the time it was

violated. Hunter v. Town of Mocksville, 789 F.3d 389, 396 (4th Cir. 2015). A court may consider either prong first. Pearson, 555 U.S. at 236. "For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Safar v. Tingle, 859 F.3d 241, 246 (4th Cir. 2017) (quotation marks and citation omitted).

As discussed above, the Court finds that Hanson's ripping of the citation constituted a refusal to promise to appear, and Trooper Goodman's arrest of Hanson was lawful. Even if it were unlawful for some reason, however, there was nothing putting Trooper Goodman on notice that the conduct was unlawful. In other words, Trooper Goodman had no notice that ripping up the citation did not constitute a refusal to accept and appear. The Court finds that, at the time of Trooper Goodman's actions, it was not clearly established that the actions were in violation of the United States Constitution. Hanson has not shown that existing precedent has placed the constitutional question beyond debate. Accordingly, Trooper Goodman is also entitled to qualified immunity in his individual capacity, and the individual capacity claims against him are additionally **DISMISSED** for this reason.

### V. CONCLUSION

For the reasons discussed above, the motion to dismiss is **GRANTED** [ECF No. 5]. This action is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 19, 2025

*Tom S Kleeh*
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA